1                                                    The Honorable Marsha J. Pechman

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**
                         **WESTERN DISTRICT OF WASHINGTON**
9                                   **AT SEATTLE**

10   OMNI INNOVATIONS, LLC, a                   NO.  CV07-0386 MJP
     Washington limited liability company;
11   JAMES S. GORDON, JR., a married            **STAMPS.COM'S MOTION TO**
     individual,                                **DISMISS FOR FAILURE TO**
12                                              **STATE A CLAIM UPON WHICH**
                                                **RELIEF CAN BE GRANTED**
13                         Plaintiffs,          **PURSUANT TO FED. R. CIV. P.**
                                                **12(b)(6)**
14           v.

15   STAMPS.COM, INC. a Delaware and            NOTE ON MOTION CALENDAR:
     California corporation; and                August 17, 2007
16   JOHN DOES, I-X,

17                         Defendants.

18

19                        **I.  INTRODUCTION**

20           Plaintiffs Omni Innovations, LLC ("Omni") and James S. Gordon, Jr. ("Gordon")

21   (together, "Plaintiffs") assert claims against defendant Stamps.Com Inc. ("Stamps.Com")

22   for alleged violations of the federal CAN-SPAM Act, 15 U.S.C. § 7701 *et seq.* ("CAN-

23   SPAM"); the Washington Commercial Electronic Mail Act, RCW 19.190 *et seq.*,

24   ("CEMA"); and the Washington Consumer Protection Act, RCW 19.86 ("CPA").  This

25   Court recently dismissed identical claims by these same Plaintiffs against Virtumundo,

26   Inc. and Adknowledge, Inc. in <u>Gordon et al. v. Virtumundo et al.</u>, Case No. CV06-0204-

27   JCC, W.D.Wash. (Coughenour, J.) ("<u>Virtumundo</u>").  In <u>Virtumundo</u>, this Court held that:

28   1) Plaintiffs lack standing to assert CAN-SPAM claims; 2) Plaintiffs' CEMA claims are

MOT. TO DISMISS - 1                **NEWMAN & NEWMAN,**          505 Fifth Ave. S., Ste. 610
CASE NO. CV07-0386 MJP             **ATTORNEYS AT LAW, LLP**      Seattle, Washington 98104
                                                                     (206) 274-2800

preempted by CAN-SPAM, and 3) Plaintiffs' CPA claims fail because they are based on Plaintiffs' CEMA claims. As such, Plaintiffs' claims have been fully litigated, and Plaintiff has lost. The doctrine of collateral estoppel bars Plaintiffs from relitigating identical claims in this action.

Moreover, Plaintiffs fail to allege that the statutory violations are material. Both the <u>Virtumundo</u> court and the highest Washington court to consider the issue held that a plaintiff must prove a material violation to succeed on its claims. Plaintiffs never specifically plead a material violation. Their complaint fails to meet even the minimal standard for notice pleading. Plaintiffs merely parrot the elements of CEMA and follow that litany with a conclusory sentence stating that Stamps.com violated the statute. As the Supreme Court recently confirmed, these allegations are not enough to provide Stamps.com a fair opportunity to respond to the allegations in this lawsuit. Accordingly, the Court should dismiss this action.

## II. FACTS

**A.    The plaintiffs and their claims are the same here as in <u>Virtumundo</u>.**

Plaintiffs in the instant action - James S. Gordon, Jr., a Washington resident, and Omni Innovations, LLC, a Washington limited liability company - were also the plaintiffs in <u>Virtumundo</u>. (*See* <u>Virtumundo</u>, First Amended Complaint (Dkt. #15) ¶¶ 3.2, 3.3 ("FAC"); Complaint (Dkt. #1) ¶¶ 1, 2.)

Plaintiffs are in the business of filing lawsuits under 15 U.S.C. § 7705 *et seq.* ("CAN-SPAM") and the Washington Commercial Electronic Mail Act, RCW 19.190 et seq. ("CEMA") (<u>Virtumundo</u>, Order (Dkt. #121) at 2:16-17) (the "Order"). Plaintiffs have filed many[1] such suits, and Gordon testified in <u>Virtumundo</u> that these lawsuits are

---

[1] Gordon and Omni are the plaintiffs in at least seven (7) CAN-SPAM lawsuits in this district alone. (<u>Omni Innovations LLC v. Inviva Inc. d/b/a American Life Direct and American Life Insurance Co of New York</u>, C06-1537 C; <u>Omni Innovations LLC v. BMG Music Publishing NA Inc.</u>, C06-1350 C; <u>Omni Innovations LLC v. Publishers Clearing House Inc.</u>. C06-1348 T; <u>Omni Innovations LLC v. Efinancial LLC et al.</u>, C06-01118-MJP; <u>Omni Innovations LLC v. Insurance Only Inc et al.</u>, C06-01210-TSZ;

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1 | their sole source of income.  (<u>Virtumundo</u>, Gordon Deposition Transcript, attached as

2 | Exhibit A to the Declaration of Derek A. Newman (Dkt. #101) at 118:2-6.)   In

3 | <u>Virtumundo</u>, as in most of their lawsuits, Plaintiffs asserted violations of CAN-SPAM;

4 | CEMA, and CPA. (*See* <u>Virtumundo</u>, FAC ¶¶ 4.1, 4.2.)  In this action, Plaintiffs assert the

5 | same causes of action. (*See* Complaint (Dkt. #1) ¶¶ 17-20.)

6 | **B.    Plaintiffs' CAN-SPAM claims are the same.**

7 | In enacting the CAN-SPAM act, 15 U.S.C.§ 7701 et seq., Congress expressly

8 | recognized that commercial email offers "unique opportunities for the development and

9 | growth of frictionless commerce." 15 U.S.C. § 7701(a)(1). Anti-spam and consumer

10 | groups urged Congress to ban all unsolicited commercial email, and to create a private

11 | right of action for liquidated damages. Congress declined, and instead enacted a scheme

12 | 1) to create a nationwide standard for commercial email; 2) to prohibit senders of

13 | commercial electronic mail from misleading recipients as to the source or content of such

14 | mail; and 3) to ensure that recipients of commercial electronic mail have the right to

15 | decline additional email from a particular source. 15 U.S.C. § 7701(b). The Act does not

16 | create any private cause of action for individual recipients of unsolicited commercial

17 | email, even if those emails violate the requirements of the Act. Rather, the Act is

18 | enforceable *only* by the Federal Trade Commission and other specified federal agencies,

19 | by state Attorneys General; and by "provider(s) of Internet access service" who are

20 | "adversely affected by a violation of section 7704 (a)(1), (b), or (d) of [the Act], or a

21 | pattern or practice that violates paragraph (2),(3), (4), or (5) of section 7704 (a)." 15

22 | U.S.C. § 7706(g)(1) (emphasis added).

23 | The defendants in <u>Virtumundo</u> moved for summary judgment on all causes of

24 | action.  (*See* <u>Virtumundo</u>, Dkt. #98.) The defendants argued that Omni and Gordon were

25 | not "providers of Internet access service" and in any event had not been "adversely

Omni Innovations LLC v. Ascentive LLC et al., C06-01284-TSZ; Omni Innovations LLC et al v. Inviva Inc et al., C06-01537-JCC.)

NEWMAN & NEWMAN, ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

affected" by violations of CAN-SPAM. In its Order dated May 15, 2007 this Court

granted defendants' motion and dismissed Plaintiffs' claims finding:

> that Plaintiffs do not have CAN-SPAM standing.
>
> *****
>
> ...even if there is some negligible burden to be inferred from the mere fact that unwanted e-mails have come to Plaintiffs' domain, it is clear to the Court that whatever harm might exist due to that inconvenience, it is not enough to establish the "adverse effect"intended by Congress.
>
> *****
>
> Plaintiffs also admit to *benefitting* from spam by way of their research endeavors and prolific litigation and settlements.  This belies any suggestion that Plaintiffs are "bona fide Internet service providers" that have been "adversely affected" by spam.  Instead, Plaintiffs' continued use of other people's e-mail addresses to collect spam and their undisputed ability to separate spam from other e-mails for generating lawsuit-fueled revenue directly contradicts any hint of adverse effect that otherwise might exist. Plaintiffs are not the type of entity that Congress intended to possess the limited private right of action it conferred on adversely affected bona fide Internet access service providers.

(Order at 13:15; <u>Id</u>. at 13:23-25; <u>Id</u>. at 15:9-14 (emphasis original).) [2]

In the instant action, Plaintiffs sue under CAN-SPAM as "the providers of the

Internet access service receiving ...E-Mail." (Complaint (Dkt. #1) ¶ 17).  Significantly,

the time period in which the violations of CAN-SPAM are alleged to have occurred is

identical to that alleged in <u>Virtumundo</u>.  In <u>Virtumundo</u>, Plaintiffs sought damages for

acts that allegedly commenced on August 21, 2003 and continued until at least February

15, 2006.  (Order at 2:19-3:2.) Here, Plaintiffs seek damages for acts that allegedly

occurred "[d]uring the time period of approximately August 2003 through present."

(Complaint (Dkt. #1) at ¶ 11.)   The Court ruled in <u>Virtumundo</u> that during this time

period Plaintiffs were not "adversely affected" by receiving an email, and thus lacked the

standing CAN-SPAM requires.

---

[2] Plaintiffs appealed on June 15, 2007 (<u>Gordon v. Virtumundo, Inc.</u>, No. 07-35487 (9th Cir.)).

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  **C.      Plaintiffs' CEMA and CPA claims are the same.**

2          In <u>Virtumundo</u>, as here, Plaintiffs asserted claims under Washington's Commercial

3  Electronic Mail Act, RCW 19.190 *et seq.*  RCW 19.190.020 prohibits transmitting a

4  commercial email message that "misrepresents or obscures any information in identifying

5  the point of origin or the transmission path" of the message.

6          Plaintiffs claimed in <u>Virtumundo</u> that the "headers" of defendants' emails were

7  misleading because they "misrepresent[ed] or obscure[ed] . . . information in identifying

8  the point of origin or the transmission path" because the "from name" alone did not

9  identify defendant Virtumundo. (Order at 18:7-9.)  Plaintiffs claim in this action that

10 Defendant's emails are misleading because "IP address and host name information do not

11 match, or are missing or false, in the 'from' and 'by' tokens in the Received header field;

12 and dates and times of transmission are deleted or obscured." (Complaint (Dkt. #1) ¶ 13.)

13 Although these factual allegations may appear dissimilar, they are functionally identical

14 in that neither alleges a *material* misrepresentation, that is, a misrepresentation that would

15 prevent a recipient from readily identifying the sender.

16         In <u>Virtumundo</u>, Plaintiffs' claims under the CPA were based solely on the alleged

17 violations of CEMA and the acts constituting such alleged violations.  (<u>Virtumundo</u>, FAC

18 (Dkt. #15) ¶¶ 4.2.4, 4.2.5.)  This Court dismissed Plaintiffs' CPA claims, holding that

19 "[b]ecause Plaintiffs' preempted CEMA claims are the basis for their CPA claims, the

20 CPA claims too must fail." (Order at 20:25-21:1.)  Here, Plaintiffs' claims under the CPA

21 are based solely on the alleged violations of CEMA and the acts constituting such alleged

22 violations.  (Complaint, ¶ 20.)

23                              **III.  ARGUMENT**

24 **A.      The <u>Virtumundo</u> decision has preclusive effect in this lawsuit.**

25         As a general rule, courts may not consider materials beyond the pleadings in a

26 ruling on a Rule 12(b)(6) motion. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir.

27 2001). Courts may, however, consider documents referenced extensively in the complaint,

28 documents that form the basis of the claim, and matters of judicial notice when

**Newman & Newman,**
**Attorneys at Law, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1  determining if a plaintiff has stated a claim upon which relief may be granted. United

2  States v. Ritchie, 342 F.3d 903, 908–09 (9th Cir. 2003).  The Court need only take

3  judicial notice of its own record in Virtumundo to establish that the issues in the instant

4  action have already been litigated by Gordon and Omni, who lost.  Re-litigation of these

5  same issues is barred by the doctrine of collateral estoppel.

6      "Collateral estoppel" or "offensive nonmutual issue preclusion" generally prevents

7  a party from relitigating an issue that the party has litigated and lost.  See Catholic Social

8  Servs., Inc. v. I.N.S., 232 F.3d 1139, 1152 (9th Cir. 2000).  In the interest of efficient and

9  expeditious judicial administration, res judicata and as a corollary, collateral estoppel, can

10  be raised and considered by a Rule 12(b) motion to dismiss. Pyles v Keane, 418 F Supp

11  269 (SD NY 1976).

12      The application of "offensive nonmutual issue preclusion" is appropriate if:

14  1.   there was a full and fair opportunity to litigate the identical issue in
        the prior action, see Fund for Animals, Inc. v. Lujan, 962 F.2d 1391,
15      1399 (9th Cir. 1992); Resolution Trust Corp. v. Keating, 186 F.3d
        1110, 1114 (9th Cir. 1999); Appling v. State Farm Mut. Auto Ins.
16      Co., 340 F.3d 769, 775 (9th Cir. 2003);

17  2.   the issue was actually litigated in the prior action, see Appling, 340
        F.3d at 775;

18  3.   the issue was decided in a final judgment, see Resolution Trust
19      Corp., 186 F.3d at 1114; and

20  4.   the party against whom issue preclusion is asserted was a party or in
        privity with a party to the prior action, see id.

21  See also Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006);

22  Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988).  Each of Plaintiffs' claims

23  in this action satisfies this standard.

24      **1.    Plaintiffs' CAN-SPAM claims are preempted.**

25      Plaintiffs' CAN-SPAM claims meet the Ninth Circuit's test for offensive

26  nonmutual issue preclusion.  First, Plaintiffs had a full and fair opportunity to litigate the

27  issue of CAN-SPAM standing in Virtumundo.  Even a cursory review of the Court's

28  docket in Virtumundo is sufficient to establish this fact; the docket contains 140 entries

MOT. TO DISMISS - 6
CASE NO. CV07-0386 MJP

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1   over fifteen months.  As the Order makes clear, the factual record relating to Plaintiffs'

2   alleged Internet access services is extensive.  Second, the issues of standing and adverse

3   effect were litigated and were the basis for the Court's ruling.  Third, final judgment was

4   entered in favor of Virtumundo and the other defendants.  *See* <u>Virtumundo</u> at Dkt. # 122.

5   Finally, Plaintiffs are the identical parties to the <u>Virtumundo</u> action.  Consequently, the

6   Court's Order in <u>Virtumundo</u> has a preclusive effect in this lawsuit.[3]

7          **2.    Plaintiffs' CEMA and CPA claims are both precluded and preempted.**

8          Congress intended CAN-SPAM to create a single national standard for commercial

9   email, and to that end it preempts state laws, subject to a narrow exception:

10         This chapter supersedes any statute, regulation, or rule of a State or political
           subdivision of a State that expressly regulates the use of electronic mail to send
11         commercial messages, *except to the extent that any such statute, regulation,*
           *or rule prohibits falsity or deception in any portion of a commercial electronic*
12         *mail message or information attached thereto.*

13  15 U.S.C. 7707(b)(1) (emphasis added).  In <u>Omega World Travel, Inc. v.</u>

14  <u>Mummagraphics, Inc.</u>, 469 F. 3d 348 (4th Cir. 2006), the Fourth Circuit considered the

15  CAN-SPAM preemption clause in relation to an Oklahoma law that prohibits, among

16  other things, sending a commercial email that "misrepresents any information in

17  identifying the point of origin or the transmission path of the electronic mail message."

18  This is virtually identical to the CEMA provision upon which Plaintiffs base their suit.  In

19  analyzing whether the statute was preempted by CAN-SPAM, the Fourth Circuit first

20  noted that the Oklahoma statute prohibits conduct that does not amount to fraud:

21         By its terms, the statute is not limited to inaccuracies in transmission
           information that were material, led to detrimental reliance by the recipient, and
22         were made by a sender who intended that the misstatements be acted upon and
           either knew them to be inaccurate or was reckless about their truth.
23

24  <u>Omega World Travel, Inc.</u>, *supra*, 469 F. 3d at 353.  The court then turned its attention to

25

26  _____

27  [3] Plaintiffs' appeal has no effect regarding issue preclusion.  "Under Washington
    law, it has been long-established that the pendency of an appeal does not affect the
28  preclusive effect of a judgment rendered at the trial level."   <u>Martinez v. Universal</u>
    <u>Underwriters Ins. Co.</u>, 819 F. Supp. 921, 922 (W.D.Wash. 1992).

MOT. TO DISMISS - 7                   **NEWMAN & NEWMAN,**        505 Fifth Ave. S., Ste. 610
CASE NO. CV07-0386 MJP                **ATTORNEYS AT LAW, LLP**   Seattle, Washington 98104
                                                                  (206) 274-2800

1  the language of CAN-SPAM's preemption clause:

2      The exception . . .allows states to prohibit "falsity or deception" in commercial
3      e-mail messages. Those terms are not defined in the statute. However,
       "deception" requires more than bare error, and while "falsity" can be defined
4      as merely "the character or quality of not conforming to the truth or facts," it
       also can convey an element of tortiousness or wrongfulness, as in
5      "deceitfulness, untrustworthiness, faithlessness."

6  Omega World Travel, Inc., supra, 469 F.3d at 354.  The court then held that "Congress

7  did not intend "falsity" to encompass bare error because such a reading would upset the

8  Act's careful balance between preserving a potentially useful commercial tool and

9  preventing its abuse."  Id.

10      In Virtumundo, this Court adopted the reasoning and holding of Omega World

11  Travel and held that claims under CEMA that pertain to immaterial errors are preempted

12  by CAN-SPAM:

13      while claims actually alleging falsity or deception under CEMA would not be
       preempted, Plaintiffs' claims here—for, at best, "incomplete" or less than
14      comprehensive information—are for immaterial errors that may not be
       litigated under state law. Plaintiffs have not raised any issues of material fact
15      that could prove Defendants' e-mails materially "false or deceptive" as those
       terms are used in the CAN-SPAM Act.
16

17  (Order at 20:2-7.)  Plaintiffs' CEMA claims in this action similarly pertain to incomplete

18  or less than comprehensive information, rather than fraud.  Although plaintiffs allege that

19  Defendant's emails include "header information that is materially false or materially

20  misleading," the examples they provide - "IP address and host name information do not

21  match, or are missing or false, in the 'from' and 'by' tokens in the Received header field;

22  and dates and times of transmission are deleted or obscured" - would not prevent ready

23  identification of the sender and are not material.  (Complaint (Dkt. #1) ¶ 13.) As such,

24  they are preempted by CAN-SPAM.

25      Moreover, Plaintiffs' factual allegations, such as they are, do not amount to a

26  violation of CEMA. In Benson v. Or. Processing Serv., 2007 Wash. App. LEXIS 31

27  (Wash. Ct. App. 2007), the Washington Court of Appeals considered the proper

28  application of CEMA, and held that the statute does not impose liability for immaterial

MOT. TO DISMISS - 8
CASE NO. CV07-0386 MJP

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

errors.  In <u>Benson</u>, the defendant sent plaintiff hundreds of unsolicited commercial email messages. <u>Id</u>. at *2. Rather than use the "unsubscribe" links provided in the messages, the plaintiff replied to the email. <u>Id</u>. The reply address was non-functioning, and plaintiff brought suit, alleging that the non-functioning reply address constituted a violation of RCW 19.190.020. <u>Id</u>. The trial court dismissed plaintiff's claims and the Court of Appeals affirmed, holding:

> Because all the e-mail identified one of [defendant]'s domain names and most of them contained an "unsubscribe link" and listed [defendant]'s physical address and telephone number, the e-mail did not misrepresent or obscure any information identifying their points of origin or transmission paths.

<u>Id</u>. at *1.  Plaintiffs' factual allegations, which pertain to errors in email headers that most users would not be likely to notice, do not state a violation of CEMA.

Finally, like Plaintiffs' CAN-SPAM claims, Plaintiffs' CEMA claims are precluded by the doctrine of collateral estoppel.   Plaintiffs have had a full and fair opportunity to litigate the preemptive scope of CAN-SPAM, and the issue was actually litigated to a final judgment against Omni and Gordon.  Accordingly, Plaintiffs' CEMA claims are both precluded by the decision in Virtumundo and preempted by CAN-SPAM and cannot now be re-litigated.

Plaintiffs' CPA claims in this action are based on Plaintiffs' CEMA claims.  Thus, as fall Plaintiffs' CEMA claims, so fall Plaintiffs' CPA claims.  Because Plaintiffs' CEMA claims are both precluded and preempted, Plaintiffs' CPA claims must also be dismissed.  Moreover, Plaintiffs are estopped from asserting their CPA claims.  This same issue - the survival of CPA claims in the absence of the CEMA claims which provide their basis - was fully litigated in <u>Virtumundo</u> to a final decision against Gordon and Omni.  Plaintiffs' CPA claims must therefore be dismissed.

**B.    The Complaint should be dismissed for failure state a claim upon which relief can be granted because Plaintiffs did not allege material violations.**

Citing <u>Omega World Travel, Inc.</u>, *supra*, 469 F. 3d at 353, the <u>Virtumundo</u> Court held that "immaterial errors . . . may not be litigated under state law". (Order at 20:2-7.)

1    The highest Washington state court to consider the issue concurred.  See Benson, *supra*,

2    2007 Wash. App. LEXIS 31.  Consequently, Plaintiffs cannot state a claim without

3    alleging material errors in the emails at issue.

4        Plaintiffs' complaint fails to specifically allege material errors, and should be

5    dismissed for failure to meet the pleading standards of FED. R. CIV. P. 8(a).  Although the

6    bar set by Rule 8 is low, it is a bar nonetheless.  As the Supreme Court recently clarified:

7        While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
         detailed factual allegations, ibid., a plaintiff's obligation to provide the
8        "grounds" of his "entitle[ment] to relief" requires more than labels and
         conclusions, and a formulaic recitation of a cause of action's elements will not
9        do. Factual allegations must be enough to raise a right to relief above the
         speculative level on the assumption that all of the complaint's allegations are
10       true.

11   Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007); *see also* Gen-Probe, Inc. v. Amoco

12   Corp., 926 F. Supp. 948, 961 (S.D. Cal. 1996) (providing that, "Even under liberal notice

13   pleading, the plaintiff must provide facts that 'outline or adumbrate' a viable claim for

14   relief, not mere boilerplate sketching out the elements of a cause of action.").  Judge

15   Lasnik recently held that Fed. R. Civ. P. 8(a) requires that the complaint must give notice

16   of the basic events and circumstances giving rise to plaintiffs' claims to afford defendants

17   a meaningful opportunity to respond.  In re Network Commerce Secs. Litig., 2006 U.S.

18   Dist. LEXIS 30945, *15 (W.D.Wash. May 16, 2006) (Lasnik, J.) (concluding that

19   plaintiffs' bald assertions were "so vague that defendants cannot meaningfully respond");

20   *see also* United States ex rel. Karvelas v Melrose-Wakefield Hosp., 360 F.3d 220 (1st Cir.

21   2004) cert den 543 US 820 (2004).

22       Plaintiffs's CAN-SPAM, CEMA and CPA claims are all based on the same factual

23   allegation, which merely parrots the statute:

24       Each of the E-mails misrepresents or obscures information in identifying the
         point of origin or the transmission path thereof, and contains header
25       information that is materially false or materially misleading. These
         misrepresentations include without limitation: IP address and host name
26       information do not match, or are missing or false, in the "from" and "by"
         tokens in the Received header field; and dates and times of transmission are
27       deleted or obscured.

28       On information and belief, Plaintiffs allege that some of the E-mails used the

MOT. TO DISMISS - 10
CASE NO. CV07-0386 MJP

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1    Internet domain name of a third party or third parties without permission of
     that third party or those third parties.
2

3    (Complaint, ¶¶ 13-14.)  Each cause of action then generally alleges that Stamps.com

4    initiated the transmission of emails in violation of the applicable statute and that Plaintiffs

5    suffered damage as a result.  Nowhere is it alleged that any particular email violates any

6    particular statute, nor how the emails are fraudulent or deceitful.  The complaint does not

7    allege any particular prohibition that Stamps.com violated, or any specific subsection

8    contained in CEMA or CAN-SPAM.  Rather, the misrepresentations identified would not

9    prevent a recipient from easily identifying the sender of an email.  According to this

10   Court's order in Virtumundo, and Omega World Travel v. Mummagraphics, Inc., 469

11   F.3d 348, 353 (5th Cir. 2006), these allegations do not rise to the level of material errors

12   surviving preemption because the sender of the email can still be identified by looking at

13   the email.

14          Plaintiff's allegations do not meet the pleading standard established by Rule 8.  In

15   the Karvelas decision, the First Circuit noted that,

16          Even under liberal pleading requirements of Fed. R. Civ. P. 8(a), plaintiff must
            set forth factual allegations, either direct or inferential, respecting each
17          material element necessary to sustain recovery under some actionable legal
            theory; simply parroting language of statutory cause of action, without
18          providing some factual support, is not sufficient to state claim.

19   Id. at 226; see also 5 Charles Alan Wright et al., Federal Practice and Procedure § 1216 at

20   156-59 (1990) (a complaint must contain "either direct allegations on every material point

21   necessary to sustain a recovery on any legal theory . . . or allegations from which an

22   inference may fairly be drawn that evidence on these material points will be introduced at

23   trial").  It is a fundamental matter of due process that a defendant cannot defend himself

24   against allegations that the plaintiff refuses to articulate.  Cleveland Board of Education

25   v. Loudermill, 470 U.S. 532, 546 (1985) (providing that the "essential requirements of

26   due process" are "notice and an opportunity to respond."); see also State of Cal. ex rel.

27   Lockyer v. FERC, 329 F.3d 700, 710 (9th Cir. 2003) (same).

28          Plaintiffs have not identified any facts upon which their claims against Defendant

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800

1    are based.  The complaint does not allege material violations, but instead asserts trivial

2    and hyper-technical errors about "tokens in the Received header field" and "dates and

3    times of transmission".  Unless Plaintiffs allege that the emails do not reveal the senders,

4    Plaintiffs' state law claims must fail.  The complaint does not afford Stamps.com a fair

5    opportunity to understand the allegations made against them.  Therefore, the Court should

6    dismiss this case.

## IV.  CONCLUSION

8        The Virtumundo court held that Plaintiffs lack standing to sue under CAN-SPAM,

9    that Plaintiffs' CEMA claims are preempted by CAN-SPAM, and that Plaintiffs' CPA

10   claims cannot survive the dismissal of Plaintiffs' CEMA claims.  The same claims based

11   upon the same facts are at issue in this case.  These issues have been litigated and this

12   Court does not need to waste its time and resources to revisit them. Additionally,

13   Plaintiffs do not allege material violations of the statutes at issue, which is required to

14   properly state a claim.  Accordingly, Stamps.com respectfully requests the Court dismiss

15   this action and all claims alleged herein.

16       DATED this 26th day of July, 2007.

17                                          NEWMAN & NEWMAN,
                                            ATTORNEYS AT LAW, LLP
18

19

20                              By:    _____
                                       Derek A. Newman, No. 26967
21                                      derek@newmanlaw.com
                                       Randall Moeller, No. 21094
22                                      randy@newmanlaw.com

23                                     Attorneys for  Stamps.Com Inc.

24

25

26

27

28

MOT. TO DISMISS - 12
CASE NO. CV07-0386 MJP

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

505 Fifth Ave. S., Ste. 610
Seattle, Washington 98104
(206) 274-2800